IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00643-CMA

JUAN JOHNSON,

    Petitioner,

v.

LONG, *Warden*, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

Petitioner Juan Johnson is a prisoner in the custody of the Colorado Department of Corrections. He brings this habeas corpus action under § 2254 to challenge a state-court conviction for felony murder. Petitioner's habeas application initially asserted three claims. The Court dismissed two of the claims (and their subparts) on procedural grounds. (*See* Doc. # 18). What remains is Petitioner's second claim, contending that the trial court deprived him of a fair trial by not dismissing the entire jury venire after some members witnessed a memorial commemorating the victims of murder. The memorial occurred outside the courthouse during a lunch break on the first day of trial. For the reasons below, the Court rejects the claim on the merits and denies the habeas application.

## I.      STANDARDS OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)). Petitioner's remaining claim was adjudicated on the merits in state court. As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.     BACKGROUND

A jury convicted Petitioner of first-degree felony murder. (Doc. # No. 12-4). His direct appeal challenged whether he was denied a constitutionally fair trial based on jury venire members, while on a lunch break, witnessing a memorial commemorating

murder victims. Ultimately, the Colorado Court of Appeals (CCA) rejected the claim. (Doc. # 12-4). The Colorado Supreme Court denied certiorari. (Doc. # 12-5).

Petitioner's habeas application re-asserts that his constitutional right to an impartial jury was violated where prospective jurors saw the memorial, but the trial court denied his motion to dismiss the jury panel. The Court will recount the CCA's analysis of the claim, and then determine whether § 2254 provides relief.

## III. DISCUSSION

### A. CCA's denial of the claim.

Though lengthy, the CCA's factual and legal analysis of Petitioner's claim will be reproduced here in full:

> II. Defendant's Motion to Dismiss the Jury Panel
> Defendant contends that the trial court erred when it denied his request to dismiss the jury panel. We disagree.
>
> A. Background
> Upon returning from lunch recess during voir dire, defense counsel notified the trial court that some people, including Denver's elected district attorney and some relatives of murder victims, were conducting a memorial service on the courthouse steps. At least two television stations were present.
>
> Counsel stated that one of the speakers had discussed ways to "put murderers away for life." Relatives had discussed how the loss of their loved ones had affected them. Victim advocacy groups had handed out informational pamphlets.
>
> Counsel stated that he was concerned that members of the jury pool had seen the memorial service and had listened to the speakers' comments. Acknowledging that it was a "dramatic" remedy, defense counsel asked the trial court to dismiss the jury pool. The court declined.
>
> The court canvassed the jury pool instead. We divide that process into seven parts for clarity's sake.

1. The trial court asked if any of the prospective jurors had witnessed the memorial service. The court made note of the prospective jurors who raised their hands.

2. The court asked whether the prospective jurors who had raised their hands felt that what they had seen or what they had heard affected their ability to serve impartially. Five of them answered this question affirmatively.

3. The court instructed the prospective jurors that they should not speculate about or discuss the memorial service while the court interviewed each of the five prospective jurors who had answered affirmatively.

4. The court interviewed each of these five prospective jurors, one at a time, outside the presence of all the other prospective jurors.

5. Defendant renewed his request to dismiss the whole jury panel, which the court denied.

6. But the court granted challenges for cause to four of the five prospective jurors. Defendant did not challenge the fifth one for cause, although the court later dismissed that prospective juror based on the prosecution's challenge for cause on different grounds.

7. The court questioned each of the prospective jurors who replaced the five it had dismissed. The court asked them whether they had witnessed the memorial service and whether they thought that what they had seen or what they had heard could adversely affect their ability to be impartial. None of them thought so.

B. Standard of Review and Legal Principles

The trial court has broad discretion to evaluate the qualifications of prospective jurors because "it is in the best position to assess a potential juror's demeanor, credibility, and sincerity." *People v. Paglione*, 2014 COA 54, ¶ 53 (citing *People v. Fleischacker*, 2013 COA 2, ¶ 7); *see also United States v. Buchanan*, 787 F.2d 477, 480 (10th Cir. 1986). We therefore review the trial court's denial of defendant's motion to dismiss the jury pool for an abuse of discretion. *Buchanan*, 787 F.2d at 480. A trial court abuses its discretion when its actions are "manifestly arbitrary, unreasonable, or unfair." *Paglione*, ¶ 53.

Colorado courts have not addressed the specific circumstances that we face here, in which some prospective jurors saw and heard a memorial service for murder victims. They have however addressed a somewhat analogous situation in which jurors may have learned about potentially prejudicial publicity in the middle of an ongoing trial. *Harper v. People*, 817 P.2d 77, 83-84 (Colo. 1991).

If a trial court learns during a trial that the jury may have read or heard

4

potentially prejudicial media reports, it must then follow a three-step process to ensure that the defendant receives a fair trial.

*Id*. First, the court must "'determine whether the coverage has a potential for unfair prejudice . . . .'" *Id.* at 83 (quoting *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir. 1987)). Second, the court must "'canvass the jury'" to determine whether jurors were exposed to the potentially prejudicial information. *Id.* (quoting *Gaggi*, 811 F.2d at 51). Third, the court must interview those jurors who saw or heard the information, outside the presence of all the other jurors, to determine whether the information will affect their ability to serve impartially. *Id.*

Trial courts conduct this three-step process in the "framework of the facts of each case . . . ." *Id.* at 83. And they have broad discretion "in deciding the ultimate issue of whether the media reports prejudiced the defendant's right to a fair trial." *Id.* at 83-84.

"In implementing the first step, the trial court should focus principally upon whether the content of the media report is inherently prejudicial." *Id.* at 84. But there are "[o]ther relevant factors . . . ." *Id*. Courts should ask the following questions when analyzing the first step.

- Was the jury exposed to "information that would not be admissible at trial or that was not in fact adduced before the jury . . . [?]"
- "[H]ow closely" was the publicity "related . . . to the matters at issue in the trial . . . [?]"
- When did the publication or the airing of the information occur? What is the likelihood that the jurors saw or heard the information?
- Is a curative instruction likely to be effective?

*Id.*

### C. Analysis

Although the facts in this case are different from the facts in *Harper*, we apply the *Harper* test because its "rationale for canvassing the jury is also applicable in the context" that we face. *See People v. Mersman*, 148 P.3d 199, 204 (Colo. App. 2006)(applying the *Harper* test in a case in which a prospective juror made a potentially prejudicial remark during jury selection).

We begin our analysis with the first step because we conclude that the information disseminated during the memorial service was not inherently prejudicial. We therefore further conclude that the trial court did not abuse its discretion when it denied defendant's motion to dismiss the jury pool: its

> decision was not "manifestly arbitrary, unreasonable, or unfair." *See Buchanan*, 787 F.2d at 480; *Paglione*, ¶ 53.
>
> There is no evidence in the record to suggest that the victim's relatives were among those who attended or spoke at the memorial service, or, if they were, that the jurors saw them. There is no evidence to indicate that either the district attorney or the relatives of murder victims who spoke at the memorial service made any comments about *this* case. There is no evidence to imply that the pamphlets that victim advocates distributed at the service contained any information about *this* case. And there is no evidence that either of the television stations that attended the service aired any information about *this* case.
>
> So we conclude that,
> - although the memorial service concerned information that was peripherally and generically related to defendant's case — murder and the families of murder victims — it was not *closely* related to defendant's trial, *see Harper*, 817 P.2d at 84;
> - because the memorial service did not have any direct relationship with defendant's trial,
>   - there was no danger that the jury was exposed to "information that would not be admissible at trial or that was not in fact adduced before the jury[,]" *see id.*;
>   - the jury was likely to follow the curative instruction that the trial court gave, *see id.*; *see also People v. Castillo*, 2014 COA 140, ¶ 33 ("[A]bsent evidence to the contrary, a jury is presumed to follow the trial court's instructions."); and
> - the trial court went beyond what was required to ensure that defendant received a fair trial, *see Harper*, 817 P.2d at 83-84, because
>   - it interviewed each prospective juror, outside the presence of the other prospective jurors, who had stated that the memorial service might affect his or her ability to serve impartially; and
>   - it eventually dismissed all five of these prospective jurors, and they did not sit on the jury.

(Doc. # 12-4 at 5-13 (no alteration made)).

### B. Application of § 2254.

Respondents answer that the CCA's resolution of the claim was not contrary to, or an unreasonable application of, clearly established federal law. Thus, habeas relief is

not available under § 2254(d)(1). (Doc. # 25 at 22-26). Nor were the CCA's factual findings unreasonable, making relief unavailable under § 2254(d)(2). (*Id.*). Petitioner responds that "dismissing the entire jury pool was the correct remedy to ensure the accused a fair and impartial trial." (Doc. # 26 at 2). Because this was not done, the jury was tainted, and his right to an impartial jury violated. (*See id.*). Petitioner's argument proves too much.

To begin with, a criminal defendant's Sixth Amendment right to an impartial jury was clearly established at the time Petitioner's conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Skilling v. United States*, 561 U.S. 358, 377 (2010). The key question is "whether the jurors had such fixed opinions that they could not judge impartially the guilt of the defendant." *Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). Yet "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire.*" *Skilling*, 561 U.S. at 386. "Jury selection, [the Supreme Court has] repeatedly emphasized, is particularly within the province of the trial judge." *Id.* (quotations and citations omitted). "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Id.* These cases do not "stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process." *Murphy v. Fla.*, 421 U.S. 794, 799 (1975).

7

There is no basis for habeas relief on this claim. First, Petitioner fails to demonstrate the state court's rejection of this claim was contrary to clearly established federal law under § 2254(d)(1). He does not cite a materially indistinguishable Supreme Court decision that compels a different result. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

Second, the CCA's rejection of the claim was not unreasonable. As that court explained, there was no connection between the memorial and Petitioner's case, aside from both generally involving the crime of murder; the trial judge canvassed the entire jury; the trial judge individually interviewed each prospective juror who expressed a concern about the memorial outside the presence of other venire members to assess bias; and none of the five jurors who said they were affected by the memorial sat on the jury. The CCA's conclusion was thus a reasonable application of controlling federal law.

Not so, says Petitioner. He argues that the trial court erred by not dismissing the entire jury pool. Petitioner recounts that thirty-five prospective jurors saw the memorial, but only five raised their hand as being affected by the presentation. He concludes the trial court faltered by not individually polling every one of the thirty-five jurors who witnessed the memorial. (Doc. # 26 at 3-4). Because every juror who witnessed the memorial was not dismissed, Petitioner believes his jury could not have been impartial. The Court is not persuaded.

Petitioner's argument overlooks the CCA's well-supported conclusion that the memorial was not closely related to Petitioner's case. Since the two were unrelated, there was hardly a risk that jurors would be exposed to prejudicial information—*i.e.*, information about Petitioner's trial or information not admissible at Petitioner's trial. And,

as Respondents contend, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Petitioner offers no evidence to show a biased juror was impaneled. Nor does he establish any way the trial court's curative instruction was not followed. "Absent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir.1992). Petitioner therefore fails to establish how the state court's decision was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1).

Petitioner's last option for habeas relief is to show the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). He does not. Insofar as Petitioner contends the CCA erred by concluding the memorial was not co-sponsored by the Denver District Attorney's Office, the CCA's opinion states, "Denver's elected district attorney and some relatives of murder victims, were conducting a memorial service on the courthouse steps." (Doc. # 12-4 at 5). In other words, the CCA acknowledged the District Attorney's participation the event. Whether the District Attorney's Office officially co-sponsored the event is therefore immaterial. And the Court's review of the state-court record confirms the

CCA's factual findings. (*See* Doc. # 23, Trial Tr. at 1390-1448; 1562, Sept. 26, 2011).[1]

Consequently, the claim fails to find a basis for habeas relief under § 2254(d)(2).

## IV.   CONCLUSION

In all, Petitioner points to nothing from the state-court proceedings that qualifies as the sort of "extreme malfunction in the state criminal justice system" that § 2254 guards against. *See Richter*, 562 U.S. at 102. The Court therefore

**ORDERS** that the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (Doc. # 1) is DENIED and this case is DISMISSED WITH PREJUDICE; and

**FURTHER ORDERS** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED: March 15, 2021.

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

1 Citations to the state-court record refer to the PDF page number, not the page number on the document.